UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EFREM WALKER,

    Plaintiff,

vs.                                              Case No. 11-12085

9912 EAST GRAND RIVER ASSOCIATES,
LP,                                           HON. AVERN COHN

    Defendant.
_____/

# MEMORANDUM AND ORDER
# GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 17)
# AND
# DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 13)
# AND
# DISMISSING CASE[1]

I.  Introduction

This a public accommodation disability discrimination case.  Plaintiff Efrem Walker, is suing defendant 9912 East Grand River Associates, LP claiming that defendant's facility fails to comply with Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181, et. seq.[2]  He seeks injunctive relief and litigation expenses.

Before the Court is plaintiff's motion for summary judgment and defendant's cross motion for summary judgment.  Plaintiff's motion is based on an expert report which describes several alleged ADA violations at defendant's facility.  Defendant's

---

[1]The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Plaintiff also claimed a violation of Michigan's Persons With Disabilities Civil Rights Act, M.C.L. § 37.1101, et seq, but later stipulated to withdraw that claim along with his request for economic damages.  See Doc. 11.

motion is based on (1) plaintiff's lack of standing and (2) failure to exhaust.  Defendant also contends that even if plaintiff has standing and the record shows ADA violations, there is a genuine issue of material facts as to whether the removal of the barriers is readily achievable such that plaintiff's motion should be denied.

For the reasons that follow, defendant's motion will be granted, plaintiff's motion will be denied and the case will be dismissed.

## II.  Background

The material facts as gleaned from the record follow.[3]

Plaintiff has spinal bifida and is confined to a wheelchair.  He qualifies as an individual with a disability for purposes of the ADA.[4]  Walker resides in Pontiac, Michigan.

Defendant owns a property known as Charrington Square, which is a place of public accommodation under the ADA.  Charrington Square is located in Brighton, Michigan.

At some point in 2011, plaintiff was driven by an unidentified male friend to Brighton, which is about 40 miles from plaintiff's home.  Plaintiff testified he did not know

---

[3]Determining the actual facts surrounding plaintiff's visit to defendant's property was complicated by plaintiff making material changes to his deposition testimony by way of an "Errata Sheet" and an affidavit.  As will be explained, plaintiff's deposition testimony is controlling and the facts as he testified to at deposition are set forth below.

[4]The Court is well aware that plaintiff is a frequent litigator in this district, having been a named plaintiff in at least sixty (60) cases dating back to 2003.  Some of the cases list Disabled Patriots of America and plaintiff as the named plaintiffs.  Others list just plaintiff.  From a cursory review, all of the cases appear to be public accommodation cases under Title III of the ADA.  Indeed, plaintiff is named in another case before the undersigned, Walker v. Asmar Center, 11-11745, which the Court was informed has been settled.

where they were going or what they were going to do.  Plaintiff also testified that he had never been to Brighton before and does not know the route from his home to Charrington Square.

When they arrived at Charrington Square, plaintiff testified that his friend parked in a handicap parking space and they went to get something to eat and.  Plaintiff, however, could not recall the name of the store where he parked.  He further testified that he ate at an "oriental" restaurant, but could not recall the name.

Regarding barriers, plaintiff testified that he encountered "cracks in the parking lot" and "the ramp was kind of steep."  Plaintiff, however, testified that he was able to travel across the cracks and the ramp.  Plaintiff says he purchased an egg roll inside the restaurant.  He also testified that he recalled the tables were too close together and did not remember any other barriers.

Plaintiff also testified that they went to a "pie shop" at Charrington Square.  However, plaintiff could not describe the location of the pie shop relative to the restaurant.  He also testified that he looked at the pies, but did not buy one because they did not look appealing to him.

Plaintiff and his friend left Charrington Square and went home.  Plaintiff has not returned to Charrington Square or Brighton since the visit he describes.

Plaintiff admitted that there are several Chinese food restaurants that he has eaten at in Pontiac and Auburn Hills.  Plaintiff also testified that these restaurants are located within minutes of his home.

### III.  Legal Standard

Although defendant moved under Fed. R. Civ. P. 56, the more appropriate rule

for its standing argument is Fed. R. Civ. P. 12. Rule 12(b)(1) provides for a motion to dismiss for lack of jurisdiction and applies when a party argues a lack of standing. As an Article III court, this Court only has the power to resolve actual cases and controversies. U.S. Const. art. III, § 2; Sprint Commc'ns Co., L.P. v. APPCC Servs., Inc., --- U.S. ----, ----, 128 S.Ct. 2531, 2535 (2008). The case or controversy requirement is only satisfied if the Court can satisfy itself that the plaintiff has standing. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Standing is evaluated based on the facts as they existed at the time the complaint was filed. Cleveland Branch, NAACP v. City of Parma, 263 F.3d 513, 524 (6th Cir. 2001).

Defendant's argument regarding the sufficiency of plaintiff's proofs falls under Rule 56. Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must

4

present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

IV. Analysis

A. Plaintiff's Proofs

1. Errata Sheet

Before addressing whether plaintiff has standing or other arguments, the Court must consider how to deal with the conflict between plaintiff's deposition testimony and as reflected in (1) an "Errata Sheet" he submitted regarding his deposition testimony (Doc. 27-4) and (2) an affidavit he signed after his deposition testimony (Doc. 27-2).

As to the errata sheet, Fed. R. Civ. P. 30(e) governs a deponent's right to review and make changes to a deposition transcript. The rule states as follows:

> (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
>
> (2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30–day period.

Fed. R. Civ. P. 30(e).

Defendant argues that the errata sheet is improper because it contradicts plaintiff's answers at deposition. Several courts of appeals have offered differing views on whether Rule 30(e) permits a deponent to change deposition testimony where the

5

changes contradict the original answers. A discussion of these differing views can be found in Devon Energy Corp. v. Westacott, 2011 WL 1157334, at *4–6 (S.D.Tex. Mar. 24, 2011). As the court in Devon Energy explained, the Sixth Circuit is apparently the "[o]ne court of appeals [that] permits a deponent to correct only typographic and transcription errors." Id. at *5 (citing Trout v. FirstEnergy Generation Corp., 339 Fed.Appx. 560, 565–66 (6th Cir. 2009) (stating that Rule 30(e) does not allow a deponent to alter what was said under oath)).

Applying this standard to the errata sheet, it is clear that plaintiff is attempting to make material changes to his deposition. He is not attempting to correct typographical or transcription errors. The following examples demonstrate this:

> Q: And you already told me several times that you have only been to Brighton once in your life, correct?
> A: Correct.

Plaintiff now attempts to change his answer to "I have been in Brighton several times before, but cannot recall with specificity when those times were."

Plaintiff also attempts to change his deposition testimony regarding the alleged architectural barriers he encountered at Charrington Square.

> Q: Other than cracks in the parking lot and the ramp being kind of steep, were there any other problems or issues or architectural barriers that you encountered after leaving your friend's car and on your way to the oriental restaurant?
> A: Not offhand, no.

Plaintiff now wants to change his answer to "I remember thee were no access aisles at the parking place."

Plaintiff also attempts to change his answer regarding using the bathroom at the restaurant:

> Q: Did you ever go inside the bathroom at the oriental restaurant?
> A: I don't remember.

Plaintiff now wants to say "Yes."

> Q: As since you don't remember whether or not you went inside the bathroom, you're not able to tell me anything about the bathroom, correct?
> A: Correct

Plaintiff now says his answer should be "I remember the toilet paper being too high and the pipes in under the sink being bare."

Simply stated, plaintiff's errata sheet attempts to make material changes to his deposition testimony far beyond what is allowed in this circuit, much less under Rule 30(e) in general. As one court put it,

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

Greenway, 144 F.R.D. 322, 325 (W.D. La. 1992) 325. As another court explained:

> The purpose of a deposition is to memorialize testimony or to obtain information that can be used at trial or that eliminates the pursuit of issues or that inform decisions as to the future course of the litigation. One of the main purposes of the discovery rules, and the deposition rules in particular, is to elicit the facts before the trial and to memorialize witness testimony before the recollection of events fade or "it has been altered by ... helpful suggestions of lawyers." Those purposes are disserved by allowing deponents to "answer questions [at a deposition] with no thought at all" and later to craft answers that better serve the deponent's cause. Indeed, to allow such conduct makes a mockery of the serious and important role that depositions play in the litigation process.

E.I. du Pont de Nemours v. Kolon Indus., 277 F.R.D. 286, 297 (E.D. Va. 2011) (internal citation omitted). Thus, the errata sheet will not be considered as part of plaintiff's

7

proofs.

2. Affidavit

Regarding plaintiff's affidavit, defendant says that it cannot be considered because it contradicts or otherwise attempts to change his deposition testimony. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986). Thus, when determining whether to strike a post-deposition affidavit, the district court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." Aerel, S.R.L., v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir.2006). If so, then the court must strike the affidavit "unless the party opposing summary judgment provides a persuasive justification for the contradiction." Id.

Here, plaintiff's affidavit contradicts his deposition testimony in several respects. For instance, in the affidavit plaintiff sets forth architectural barriers that he encountered on defendant's property which he did not testify about, including that there was no seating at the pie place and barriers at the bathroom at the oriental restaurant. Moreover, while plaintiff testified at deposition that there was no reason for him to go back to Charrington Square, he now states in his affidavit that it would be "futile" to return there until the property is ADA compliant. As such, the Court will not consider the affidavit in determining whether plaintiff has standing.

B. Standing

1 Generally

The party seeking federal court action has the burden of establishing standing.

8

Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 927 (6th Cir. 2002). This burden increases as the litigation proceeds. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (standing elements must be proven "with the manner and degree of evidence required at the successive stages of litigation"). Because defendant is making a factual attack upon plaintiff's allegations of subject-matter jurisdiction, generalized allegations of standing will not suffice. Ctr. For Biological Diversity v. Lueckel, 417 F.3d 532, 537 (6th Cir.2005). Instead, plaintiff must " 'set forth specific facts,' in affidavits or through other evidence, demonstrating that each element of standing is satisfied." Id. (quoting Fed. R. Civ. P. 56).

To establish standing, a plaintiff must demonstrate: 1) he has suffered an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; 2) a causal connection between the injury and the challenged conduct, that is, "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court"; and 3) the injury's redressability by a favorable judicial decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Doe v. Porter, 370 F.3d 558, 562 (6th Cir. 2004). See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000).

Where, as here, a plaintiff seeks injunctive relief, he must demonstrate that there is a non-speculative, imminent threat of repeated injury to establish that there is an injury in fact. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Fieger v. Michigan Supreme Court, 553 F.3d 955, 966 (6th Cir. 2009). "Past exposure to illegal

conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495 (1974). " 'Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to merely conjectural or hypothetical-threat of future injury.' " Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994); accord Whitmore v. Arkansas, 495 U.S. 149, 158(1990) ("A threatened injury must be certainly impending to constitute injury in fact" (internal quotation marks omitted)).

2. Standing under Title III[5]

"Congress enacted the ADA in 1990 to remedy widespread discrimination against individuals." PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001). Title III of the ADA applies to discrimination by places of public accommodation. The statute provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation.

42 U.S.C. § 12188(a). It is not disputed that Charrington Square is a place of public accommodation as defined by Title III. Private litigants suing under Title III are entitled only to injunctive and declaratory relief. See 42 U.S.C. § 12188; Association for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F. Supp. 2d 1353, 1358 (S.D. Fla. 2001); Powers v. MJB Acquisition Corp., 993 F. Supp. 861, 867 (D. Wyo. 1998); Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1120 (9th Cir. 2000); American Bus Assoc. v.

---

[5]This discussion is taken from the Court's opinion in Walker v. Asmar Center, 11-11745. (Doc. 17 at p. 5-7)

Slater, 231 F.3d 1 (D.C. Cir. 2000); Stan v. Wal-Mart Stores, Inc., 111 F. Supp. 2d 119, 124 (N.D.N.Y. 2000).

In the ADA context, courts have held that a plaintiff must establish a likelihood of returning to the defendant's business to demonstrate a real threat of future harm. See, e.g., Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000); Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002); Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 946 (C.D. Cal. 2005); Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1079-80 (D. Haw. 2000) (plaintiff must demonstrate a sincere intent to return); Davis v. Flexman, 109 F. Supp. 2d 776, 784 (S.D. Ohio 1999) (patient lacked standing to seek injunctive relief under ADA where there was no evidence that she intended to return to the clinic).

To this end, courts have considered: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." D'lil v. Stardust Vacation Club, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec.21, 2001); Vaughn v. Rent-a-Center, No. 2:06-CV-1207, 2009 WL 723166 (S.D. Ohio March 16, 2009).

Defendant argues that plaintiff does not have standing in light of these factors. The Court agrees.

### 3. Application

Considering the first factor regarding the proximity of Charrington Square to plaintiff's residence, it is not likely that plaintiff will return to defendant's business. Plaintiff resides over 40 miles away. He testified he only went to Brighton once in 2011

11

because his friend took him there, and he did not know where they were going or how they got there. Plaintiff's patronage of Charrington Square was limited to buying an egg roll at one business and going inside another. As to his plans to return, plaintiff testified that he had no reason to return. He testified he has no friends, family, business or social reason that would bring him to Brighton. Plaintiff even acknowledged that there are restaurants closer to his home where he can purchase an egg roll. Plaintiff offered no evidence of frequent travel near Charrington Square, much less the city of Brighton. Rather, it is clear that plaintiff's contact with the area was limited to one visit at sometime in 2011. This is insufficient. Because the balance of the factors in this case weigh against a finding that plaintiff is likely to return to defendant's property, plaintiff lacks standing to bring this suit.

Moreover as defendant points out, plaintiff has failed to establish actual knowledge of any barriers he encountered to show he suffered an actionable injury. Plaintiff testified he was able to navigate defendant's property. At best, he said that he saw tables which were too close together, cracks in the sidewalk, and an undisclosed ramp that was "kind of steep." Moreover, the expert report, for all its details in alleged violations, does not identify where plaintiff parked or his route while at Charrington Square. On this record, plaintiff has failed to show the minimum standing requirement by showing a barrier he actually encountered.

### C. Other arguments

Defendant also argues that even if plaintiff had established standing, plaintiff is not entitled to summary judgment because there is a genuine issue of material fact as to whether the removal of barriers described in the expert report is readily achievable.

Given the determination that plaintiff lacks standing, it is not necessary to address this argument. The Court also declines to address defendant's exhaustion argument, but notes that it rejected a similar argument in Asmar. Finally, because plaintiff lacks standing, it follows that he is not entitled to summary judgment.

V. Conclusion

While the Court is mindful of an ADA challenge under Article III, plaintiff has failed on the record to establish that he has the requisite standing to challenge the ADA compliance of defendant's property.

Accordingly, defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. This case is DISMISSED.

SO ORDERED.

     S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: April 3, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 3, 2012, by electronic and/or ordinary mail.

     S/Julie Owens
Case Manager, (313) 234-5160